## CARRIE E. HUNT *vs.* BUILDERS IRON FOUNDRY.

### AUGUST 19, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This original petition for apportioned compensation benefits was brought by a widow and sole dependent of a deceased employee under article VIII, §7, of the workmen's compensation act, general laws 1938, chapter 300. From a decree of the superior court awarding only certain burial, medical and hospital expenses and denying dependency benefits by way of apportionment under the statute, both petitioner and respondent have duly prosecuted appeals.

The evidence shows the following facts. William Hunt, the employee, on September 14, 1944 sustained a left inguinal hernia arising out of and in the course of his employment by the respondent. He was admitted to the Rhode Island Hospital October 4, 1944 for a surgical operation but due to subsequent bronchial pneumonia and to his general condition no operation was performed. He was discharged November 1, 1944, and thereafter a preliminary agreement based upon total incapacity from occupational hernia was entered into and was approved by the director of labor. Under that agreement he was paid $20 weekly until his death on September 30, 1946. The cause of death appearing on the certificate filed by his attending physician, Dr. Joseph W. Reilly, was "Myocardial insufficiency Myocardial infarction." No mention therein was made of the hernia or its effect.

Prior to the injury in question here, the employee had a history of successive herniae and a chronic heart condition. On February 22, 1935 a double indirect inguinal hernia of the right and left sides was repaired by surgery by Dr. Leo V. Conlon. Sometime thereafter the employee suffered a coronary thrombosis which confined him to bed for six or seven weeks. Subsequently, however, he returned to work and on February 17, 1939 Dr. Conlon repaired a recurrent indirect inguinal hernia on the left side, at which time there was a soft systolic murmur of the heart that was transmitted to the axilla.

On September 22, 1939 the hernia on the left side reappeared and Dr. Conlon, by a surgical operation, reenforced the structures of the abdominal wall by way of a graft (*fascia lata*). Dr. Conlon testified in effect that at that time the employee's heart was doing its work sufficiently to permit such an operation. He further testified in response to a hypothetical question that while a small hernia probably would have no contributing causal effect upon the employee's pre-existing heart condition or death, nevertheless in his opinion a large scrotal hernia of the type the employee was described as having from 1944 to 1946 at his age "could be indirectly a contributing factor to a heart condition" and he "should say it could be major," that is, "could predispose to his heart condition being aggravated, and possibly being contributing cause of his death."

There was also testimony from Dr. Reilly, the attending physician at the time of the last hernia, to the effect that the employee suffered considerable internal functional interference and strain because of this large hernia; that an ordinary hernia would not aggravate a pre-existing heart condition but that a hernia "as large as a large grapefruit" and extending into the scrotum, which was the employee's condition from 1944 to 1946, indirectly affected his heart and in his opinion would be a contributing factor, probably a major one, in the cause of employee's death. He also explained that myocardial insufficiency and myocardial infarction, which appeared as the cause of death in the certificate, was intended by him to denote merely the primary or immediate cause of death.

In addition to the testimony of these two doctors, the petitioner introduced in evidence the Rhode Island Hospital record which showed among other things that considering his age and previous history the employee's heart was in reasonably good condition in October 1944, when he was hospitalized because of his last hernia. No statement appears therein to suggest an advanced kidney condition at that time. His general condition, however, from complica-

tions traceable to his heart and in some degree to the hernia, was not then sufficiently good to withstand a major operation. There was other evidence to show that this large hernia, which was in existence for almost two years prior to his death, produced some functional interference, strain and general inconvenience as well as an aggravating effect upon the pre-existing heart condition and perhaps the kidneys.

On the other hand the respondent introduced testimony of Dr. Peter Pineo Chase, who examined the employee for the first time on January 30, 1946, when he found that the employee was suffering from a very bad heart and probably a definite kidney condition. In his opinion the hernia in question did not contribute in any way to aggravate the pre-existing heart condition; it did not interfere with or affect his other functional operations; and it was not a contributing causal factor in his death.

The trial justice on this conflicting evidence entered a decree in which he made the following findings of fact: "1. That the deceased had an occupational disease of hernia, arising while deceased was in the employment of the respondent, and said occupational disease aggravated a pre-existing chronic heart condition. 2. That cause of deceased's death was myocardial insufficiency and myocardial infarction. 3. That the occupational hernia was a contributing and causative factor in the death of the deceased. 4. That the medical testimony offered by petitioner is insufficient to determine the proportion, as a causative factor, that the occupational disease bears to the primary cause of death. 5. That the petitioner was the widow and sole dependent of the deceased." It is from the entry of this decree that the petitioner and respondent each have claimed an appeal.

Treating the respondent's appeal first, it does not challenge the second finding but contends chiefly that the decree is erroneous because there was no legal evidence to support findings 1 and 3. It is argued that the certificate of death filed by Dr. Reilly was conclusive as a matter of law under

G. L. 1938, chap. 268, §6, rendering inadmissible his testimony to the effect that there was also a contributing causative factor which did not appear in the certificate; that the testimony of Dr. Conlon as to causal connection was purely conjectural and of no probative value; and that without such testimony from these doctors there was no legal evidence to support the first and third findings.

It is also argued that, even if there were legal evidence that such hernia accelerated or in any way contributed to the death of the employee, the burden nevertheless was on the petitioner to establish the precise measure of such acceleration or the extent of such contribution. Respondent's contention is that there is no evidence from the medical witnesses or otherwise to establish any percentage of acceleration or contribution so as to enable the trial justice to apportion the award in accordance with the statute under which the petition is brought.

We are of the opinion that there was legal evidence to support findings 1 and 3 of the decree. We do not agree with respondent's contention that by virtue of G. L. 1938, chap. 268, §6, the death certificate was conclusive as a matter of law as to evidence of the causes of death so as to bar Dr. Reilly's testimony by which the hernia was added as a contributing causative factor.

The statute relied upon by respondent to preclude Dr. Reilly from testifying to any contributing cause not mentioned by him in the death certificate, which he had filed, deals with registration of births, deaths and marriages. Section 6 prescribes generally the duties of undertakers, medical examiners, town clerks or registrars, and physicians in relation to the preparation and filing of certificates of death and permits to bury a deceased. Obviously this statute primarily relates to the purposes of health, vital statistics and investigation of deaths that might be attributable to violence or crime. While it provides that such a medical certificate shall include the cause or sequence of causes of death, primary and contributory, it nowhere

directly or by reasonable inference purports to state a rule of evidence which would make such a death certificate conclusive as a matter of law, notwithstanding the sworn testimony by which the causes in fact were elaborated more particularly.

It may be noted here that Dr. Reilly's testimony, as explained by him, merely added a contributing causative factor as distinguished from what he terms the primary or immediate cause of death, which latter was written by him in the death certificate. In our view his testimony in this particular was not inadmissible because of the quoted section of the statute and was entitled to such weight as the trial justice might give it.

The testimony of Dr. Conlon, if read as a whole, explains why he used the words "conjectural" and "hypothetical" as substantially synonymous. Apparently he felt and testified that all medical answers to hypothetical questions were necessarily conjectural because he had not personally observed the patient's condition. However, assuming that his answers to hypothetical questions, in the light of such explanation, were still open to the respondent's objection that the doctor was dealing only with possibilities and not with probabilities or actual opinions, there was the legal evidence of Dr. Reilly, if accepted, to support the finding that the occupational hernia was a substantial contributing factor in the cause of employee's death.

It is true that there also was testimony to the contrary by Dr. Chase and that other contrary inferences might have been drawn from the record as a whole; but it cannot be said that upon this conflicting evidence findings 1 and 3 of the trial justice as they appear in the decree are entirely unsupported by legal evidence. In the absence of fraud, findings that are supported by legal evidence are conclusive under the act and therefore the respondent's appeal is denied.

In our opinion the principal point in the case is raised by the petitioner's appeal. It involves an interpretation

and application of the statute under which the petition is brought, G. L. 1938, chap. 300, art. VIII, §7. The pertinent part thereof reads as follows: "Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated, or in any wise contributed to by an occupational disease, the compensation payable shall be such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bears to all the causes of such disability or death, such reduction in compensation, to be effected by reducing the number of weekly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interests of the claimant or claimants."

Obviously the formula for apportionment is stated only in general terms and provides no precise measure by which the relative values of several contributing causes may be assessed. But it is equally clear that an award was expressly intended where, as here, a compensable occupational disease was found to be a contributing causative factor in the employee's death. In such circumstances we think that the gap in the statute must be filled, if reasonably possible, by a liberal interpretation and application of the pertinent provisions in order to give some effect to the express intent of the statute.

Similar difficulties have confronted the court previously in connection with other portions of the act. In *Walsh-Kaiser Co.* v. *D'Ambra,* 73 R. I. 37, an employee was found on a petition for review to be partially incapacitated and therefore entitled to some compensation. In the absence of precise statutory provision by which the actual extent of his incapacity could be computed in the circumstances, this court, at page 42, stated: "Until the legislature expresses its intention with reference to the disposition of

such a case, which would be the approved way to deal with the question, we must determine it by adopting, with the aid of pertinent decisions of this court, a construction of the act which will in our judgment reasonably carry out its purposes." See also *Wareham* v. *United States Rubber Co.,* 73 R. I. 207, 214.

In the instant case we have a different but somewhat analogous problem. The decree contains findings 1, 2 and 3 which are based upon legal evidence and which entitle the petitioner to an apportionment of benefits in accordance with the formula set forth in the statute. Conceivably, in the absence of legislative schedules or medical evidence supplying a reasonable basis for apportionment, great difficulty might be presented if there were many contributing causes to the employee's death. But if findings 1, 2 and 3 are considered together in the light of the evidence supporting them as previously set forth, it is clear that the employee's chronic heart condition and the occupational hernia were found to be the only contributing causative factors. No other such factor appears in the findings of fact in the decree. Where there are only two such causes, each of which substantially contributes to the employee's death and where no difference in the extent of their relative contribution thereto appears in the decree, we are of the opinion that we should give such causative factors equal value in the apportionment under this statute, at least until the legislature makes other provision therefor.

If this general method of computation is applied, the occupational hernia would be considered as one of two equal contributing causes of death, and compensation therefore would be payable to the petitioner at the rate of fifty per cent of the amount that would have been payable if such occupational disease had been the sole cause of death. In reaching such conclusion we have not lost sight of the fact that there was some evidence with reference to the employee's kidney condition and certain other symptoms and ailments, and that some reference thereto was made

by the trial justice in the discussion leading up to his conclusion that the provision of the statute was impossible of application. But in our view such evidence indicates that none of those symptoms and ailments was viewed by the doctors as an independent causative factor. They all appear to have been treated as mere effects flowing either from the heart condition or the hernia. At any rate in the findings of the decree they were not specifically established as contributing causative factors in the employee's death.

The respondent's appeal is denied and dismissed. The petitioner's appeal is sustained, the decree appealed from is reversed in part; otherwise it is affirmed. On October 3, 1949 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Edward F. Dwyer, Irving I. Zimmerman,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.