229 A.2d 50.

OLIVIA ANDRADE *vs.* HERBERT MINTELL *d.b.a.* JEM NOVELTY BRAID CO.

APRIL 28, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This is an employee's original petition for compensation for incapacity resulting from an occupational disease as provided in G. L. 1956, §28-34-3. After a hearing thereon, a trial commissioner entered a decree ordering payment of compensation for partial incapacity; and from this decree both the petitioner and the respondent appealed to the full commission. The full commission

thereafter entered its decree sustaining the appeal of the petitioner in part and denying the appeal of the respondent, and from this both the petitioner and the respondent have prosecuted appeals to this court.

The record discloses that petitioner had for some time prior to May 12, 1965 been employed by respondent as a sewing machine operator. On that date, petitioner testified, she stopped working because of pain and swelling in her right wrist and did not work again except for a short period between June 1, 1965 and June 4, 1965. There is in the record medical evidence that the operation of the sewing machine involved movements of petitioner's right hand and wrist which caused the development of tenosynovitis in her right wrist.

In the course of the hearing it was disclosed that petitioner had worked from February 13, 1965 to April 3, 1965 for another employer for as much as 20 hours a week doing exactly the same type of work that she was doing for respondent here. A medical witness testified that the doing of this extra work for another employer probably contributed to the development of the tenosynovitis. The trial commissioner, while commenting on her second job as a contributing factor, found that she had "* * * sustained a tenosynovitis of the right wrist due to the nature and conditions which are characteristic and peculiar to her work as a sewing machine operator * * *," and that such injury constituted an occupational disease that arose out of and was referable to her employment.

The full commission found that petitioner had developed tenosynovitis, an occupational disease, affecting her right wrist in the course of her employment and thereby became partially disabled as of May 12, 1965. They found also that petitioner's average weekly wage was $90 and that as of May 12, 1965 petitioner "* * * has been able to earn wages at other occupations such as baby sitting, operating an

elevator, 'light housekeeping' which are neither unhealthy nor injurious to her and to earn the sum of not less than $50.00 weekly * * *." The respondent was also ordered to pay for medical services according to the provisions of the statute and to pay expert witness fees and counsel fees in specified amounts.

The respondent argues, first, that it was error not to apportion the compensation for the incapacity established between the employers. He argues that uncontradicted and unimpeached evidence establishes that the disease resulting in her incapacity was caused in part by her employment with the second employer. In so arguing, respondent directs our attention to the reasoning in *Hunt* v. *Builders Iron Foundry*, 76 R. I. 152, and in *Shurick* v. *Ames American Co.*, 96 R. I. 181. He rejects the case of *Gehring* v. *Nottingham Lace Works, Inc.*, 82 R. I. 190, contending that the incapacity here resulted from an occupational disease, whereas in *Gehring* it was a petition for death benefits where the employee had died in an airplane disaster.

We are unable to agree that *Gehring* is not in point. There, just as in the instant case, a beneficiary claimed death benefits where the deceased employee had been employed by two distinct employers under concurrent but separate contracts of employment. In *Gehring* we concluded that because the statute made no provision for apportionment between such employers, we would not read a requirement for such apportionment into the act, commenting that the matter was one for legislative action. At page 195 of the opinion we said: "However, in our opinion the contracts of his employment with the instant respondents were concurring contracts, not joint, thus giving rise to a separate claim for compensation against each corporation. Clearly the terms as to wages and the time allotted to each corporation were distinct and different. Each corporation paid him independently for his services to it. In the cir-

cumstances each should be held separately liable on its own contract of employment." This applies with equal force to the present case. *Gehring* was decided in 1954, and to date the legislature has not acted to provide for such an apportionment as between concurrent but separate employers. In the circumstances we see no valid reason for departing from the rule laid down in *Gehring*.

In both *Builders Iron Foundry* and in *Shurick, supra*, this court was considering the proper application of a statute, now G. L. 1956, §28-34-7, which provides in express terms for an apportionment of compensation where the occupational disease is but one of two or more contributing causes of the incapacity, the others being noncompensable. What we decided in *Builders Iron Foundry* was that the statute establishes no formula for such an apportionment on the basis of the relative values of several contributing causes and, therefore, "* * * the gap in the statute must be filled, if reasonably possible, by a liberal interpretation and application of the pertinent provisions in order to give some effect to the express intent of the statute." Clearly, the rule in *Builders Iron Foundry* applies a statute which requires such apportionment where the occupational disease is but one of the contributing causes to the incapacity.

In *Shurick* v. *Ames American Co., supra*, we considered that same statute and the manner in which it should be applied to an award for medical expenses. The statute makes no reference to medical expenses spcifically but only to compensation. However, this court, following the concept of applying the statute liberally in order to give some effect to the express intent thereof, decided, sub silentio, that medical expenses were within the meaning of the word "compensation" as set out in the statute and that, therefore, such medical expenses would of necessity be apportioned on the same basis as compensation.

The respondent further argues that the commission erred

in awarding petitioner counsel fees and fees for expert medical witnesses. He contends, as we understand him, that such fees, provided for in §28-35-32, as amended, apply only to proceedings brought under that chapter. Said §28-35-32, as amended, he points out, provides that counsel fees and fees for medical experts shall be awarded "In proceedings under said chapter," the reference being obviously to chap. 35, which is entitled "Workmen's Compensation—Procedure." This argument overlooks the fact that a petition to recover compensation for incapacity resulting from occupational disease is a proceeding under chap. 35 of title 28. We perceive no merit in either of respondent's contentions.

The petitioner's appeal from the decree of the full commission is based on the contention that there is in the record no legally competent evidence to support either the finding that her incapacity was only partial or that she had an earning capacity of $50 per week. These contentions, relating to the determination of disability due to occupational disease, raise a question of whether the proviso contained in §28-34-3 is a different formula for the ascertainment of the amount of compensation benefits from the formula set out in chap. 33 of title 28, which deals with traumatic injuries. Our attention has been directed to this issue in the dissenting opinion filed by one of the commissioners, and we are of the opinion that it is a different formula from that which relates to determination of incapacity for traumatic injuries.

Section 28-34-3 provides that an employee disabled by occupational disease is entitled to compensation and to medical and hosptial services as provided for in cases of traumatic injury in chap. 33 of title 28 "except as hereinafter stated in this chapter * * *." Said section then goes on to provide for a test to determine earning capacity in the following language: "* * * provided, however, that if

154

it shall be determined that such employee is able to earn wages at another occupation which shall be neither unhealthy nor injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable shall be a percentage of full compensation proportionate to the reduction in his earning capacity."

The degree to which an occupational disease restricts an employee's earning capacity and the extent of the earning capacity which such employee retains are both to be determined on the basis of legally competent evidence tending to establish that such employee can do work that is found neither unhealthy nor injurious. Once it has been determined that such an employee can perform some work within the statutory limitations, a case for partial incapacity has been met. There remains, however, the question of the procedure by which the amount of such earning capacity is to be determined in order to permit an application of the statutory formula set out in §28-34-3 that compensation paid "* * * shall be a percentage of full compensation proportionate to the reduction in his earning capacity."

Provision is made in §28-34-2 that the procedure and practice set out in chaps. 29 to 38, inclusive, of title 28 shall apply to all proceedings under the chapter devoted to occupational disease "except where specifically otherwise provided herein * * *." Unless it is otherwise required in the statute, the procedure for determining the earning capacity of an injured employee in chap. 33 of title 28 is to be used in determining the earning capacity of an employee disabled by occupational disease. We perceive nothing in chap. 34 of title 28 that provides otherwise.

The pertinent procedure, in our opinion, is that set out in §28-33-18, where the earning capacity of an employee disabled by traumatic injury who is unable to obtain other employment is found by the commission proceeding under

the power vested in it by the provision of said §28-33-18, "* * * shall have the power in the interest of justice to fix the dollar value of the weekly earning capacity which said employee has, which dollar value shall be reasonable, having due regard to the evidence and all other pertinent factors presented at the hearing." We find inescapable the conclusion that the provision of §28-33-18 conferring power on the commission to fix a dollar value as to earning capacity is made applicable to the formula stated in §28-34-3 by the pertinent provisions of §28-34-2.

However, it is clear that this power is to be exercised with "due regard to the evidence * * *" adduced at the hearing bearing on the issue of whether employment is available to the petitioner that is neither unhealthy nor injurious. The burden of establishing the nonavailability of such employment was on petitioner, and, in our opinion, she sought to meet this burden by the introduction of evidence tending to establish her disability as total. However, there is in the record evidence adduced through the testimony of a medical witness that the incapacity of the petitioner is partial. The commission having found partial incapacity and there being such evidence in the record upon which this finding may rest, it is too well settled to require citation of authority that it is conclusive upon this court absent fraud.

The burden of going ahead with evidence tending to prove that such employment was available to the petitioner was thereafter upon the respondent. We agree with the conclusion of the dissenting commissioner that there is no evidence in the record here from which it could be reasonably found that employment as an elevator operator or a baby-sitter was available to this petitioner or that such employment would not tend to be injurious. In short, it is our opinion that the finding that the petitioner had an earning capacity within the limits of the statute of $50

per week is not supported by any evidence in the record. To that extent the decree of the commission, in our opinion, should be modified to provide for payment of maximum compensation for partial incapacity.

The respondent's appeal is denied and dismissed, the petitioner's appeal is sustained in part, the decree appealed from is affirmed except as to finding numbered 4 thereof, which is reversed, and the cause is remanded to the workmen's compensation commission with direction to amend the decree in accordance with this opinion and for further proceedings.

*Manning & West, Albert B. West,* for petitioner.

*Francis V. Reynolds, Bernard W. Boyer,* for respondent.