[No. 57698-0.    En Banc.    June 27, 1991.]

WEYERHAEUSER COMPANY, *Appellant*, v. DONALD G. TRI, ET AL, *Respondents*.

---

*Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C.,* by *Craig A. Staples,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *A. Craig McDonald, Assistant,* for respondents.

*Elizabeth K. Reeve* on behalf of the Washington Self-Insurers' Association, amicus curiae for appellant.

UTTER, J. — Eight Weyerhaeuser employees suffered hearing loss as a result of occupational noise. Upon retirement, each filed a claim pursuant to the Washington Industrial Insurance Act[1] (hereinafter the Act). The Department of Labor and Industries (hereinafter the Department) determined that each worker was permanently partially disabled, and ordered Weyerhaeuser to pay the full cost of each disability. In each case, however, a portion of the employee's hearing loss occurred while the State insured Weyerhaeuser's workers' compensation program, and a portion of the hearing loss occurred after the company became a self-insurer. Weyerhaeuser argues, therefore, that the State should pay a proportionate share of the disability award.

We affirm the Department's order and hold that Weyerhaeuser, as the insurer covering the risk during the most recent exposure bearing a causal relationship to the disability, is liable for the entire amount of the award. In so holding, we follow the majority of other states and adopt the last injurious exposure rule.[2]

---

[1] Title 51 of the Revised Code of Washington.

[2] *See* 4 A. Larson, *Workmen's Compensation* § 95.20, at 17-121 (1990) and cases cited therein.

Donald Tri worked for Weyerhaeuser from 1950 through 1984.[3] When Tri began his employment, the State insured Weyerhaeuser's workers' compensation program. On January 1, 1972, Weyerhaeuser became a self-insurer pursuant to RCW 51.14. During the course of his employment, Tri suffered 43.13 percent hearing loss from both ears. Of the total hearing loss, 29.69 percent occurred during the time the State insured the workers, and 13.44 percent occurred during the time the Company[4] was a self-insurer.

Tri filed a claim for occupational hearing loss in 1985. The Department issued an order allowing the claim and directing the Company to pay the total permanent partial disability award. The Board of Industrial Insurance Appeals affirmed the Department's order. The Board applied the last injurious exposure rule, and held that the insurer "on the risk" on the date of compensable disability bears the entire cost of the disability. In an appeal from this decision, the Snohomish County Superior Court affirmed the Department's order. The Company appealed to the Court of Appeals, which certified the case to this court pursuant to RCW 2.06.030.

Weyerhaeuser does not contest either the appropriateness or the amount of the award. It only challenges the holding that it is solely liable for the full amount of that award.

In each of the cases presently on appeal the Board continued its consistent policy of applying the last injurious exposure rule in occupational disease cases.[5] Weyerhaeuser

---

[3]The individual facts surrounding each worker are not in dispute. The facts of Tri's case are representative of each worker, and are detailed for illustrative purposes.

[4]We will use the word "Company" interchangeably with "Weyerhaeuser".

[5]*See In re Lamberton*, Bd. of Indus. Ins. Appeals Dec. 63,264 (1984); *In re Pate*, Bd. of Indus. Ins. Appeals Dec. 58,399 (1982); *In re Lawrence*, Bd. of Indus. Ins. Appeals Dec. 54,394 (1980); *In re Hanninen*, Bd. of Indus. Ins. Appeals Dec. 50,653 (1979); *In re Monroe*, Bd. of Indus. Ins. Appeals Dec. 49,698 (1978).

maintains, however, that apportionment among insurers is the more appropriate rule. Under apportionment, each insurer is responsible for the portion of the disability that occurred during its coverage of the employee. Weyerhaeuser asserts three arguments in support of its position. First, it argues the segregation provisions of the Act authorize apportionment. Second, it asserts the last injurious exposure rule is incompatible with the Act. Third, it maintains that equity requires that the State be held responsible for the percentage of the disability that occurred when it provided coverage to Weyerhaeuser employees.

I

Washington statutes allow for segregation of prior disabilities in determining the amount of compensation due an injured worker. RCW 51.32.080(3) provides:

> Should a worker receive an injury to a member or part of his or her body already . . . permanently partially disabled, resulting in the amputation thereof or in an aggravation or increase in such permanent partial disability but not resulting in the permanent total disability of such worker, his or her compensation for such partial disability shall be adjudged with regard to the previous disability of the injured member or part and the degree or extent of the aggravation or increase of disability thereof.

That provision directs the Department to consider and segregate the extent of the previous disability when fixing the amount of the compensation due for the second injury. *Beyer v. Department of Labor & Indus.*, 17 Wn.2d 29, 31, 134 P.2d 948, 137 P.2d 1016 (1943); *Corak v. Department of Labor & Indus.*, 2 Wn. App. 792, 801, 469 P.2d 957 (1970).

RCW 51.32.100 provides:

> If it is determined that an injured worker had, at the time of his or her injury, a preexisting disease and that such disease delays or prevents complete recovery from such injury, it shall be ascertained . . . the period over which the injury would have caused disability were it not for the diseased condition and the extent of permanent partial disability which

the injury would have caused were it not for the disease, and compensation shall be awarded only therefor.

On its face RCW 51.32.100 relates only to setting the amount of compensation. Neither it nor RCW 51.32.080(3) explicitly addresses the question of who is liable for that compensation. Furthermore, each statute deals only with injuries; neither addresses occupational diseases.

Nonetheless, Weyerhaeuser contends that the above statutes indicate a legislative preference for apportionment. The Company interprets the segregation statutes as a type of apportionment, since those statutes "apportion" the amount of compensation based on the cause of the disability. Weyerhaeuser then points to the RCW 51.16.040 requirement that

[t]he compensation and benefits provided for occupational diseases shall be paid and in the same manner as compensation and benefits for injuries under this title.

The Company reasons that RCW 51.16.040, read in conjunction with the segregation statutes, requires apportionment in these cases. However, RCW 51.16.040 mandates only that the amount of benefits paid be the same regardless of whether the underlying cause of disability is an injury or an occupational disease. The statute does not address apportionment of responsibility for payment of the compensation.

We disagree with Weyerhaeuser's argument that the segregation provisions authorize apportionment. Those provisions only address the computation of the *amount* of the award. Furthermore, they could be read as indicating a legislative intent *not* to require apportionment of responsibility in occupational disease cases. Two rules of statutory construction lead to this conclusion.

First, each provision of the statute should be read in relation to the other provisions, and the statute should be construed as a whole. *State v. Sommerville*, 111 Wn.2d 524, 531, 760 P.2d 932 (1988). Second, when a statute specifies

the class of things upon which it operates, it can be inferred that the Legislature intended to exclude any omitted class. *State v. Williams*, 94 Wn.2d 531, 537, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980). In RCW 51.32.080(3) the Legislature authorizes segregation of a prior disability when there is an additional injury to a part of the body already permanently partially disabled. RCW 51.32.100 mandates segregation when a preexisting disease delays or prevents recovery from an injury. The "second injury fund"[6] authorizes apportionment when a previously disabled worker becomes permanently and totally disabled. Thus, the Legislature has, in three specific instances, authorized a form of apportionment. It can be inferred that the Legislature's refusal to specifically approve apportionment among successive insurers in occupational disease cases is intentional. Therefore, we reject Weyerhaeuser's argument, and decline to judicially impose apportionment in these cases.[7]

## II

Weyerhaeuser asserts that the last injurious exposure rule is incompatible with the Act. The Company's argument is twofold. First, it argues that since the Washington statutory scheme does not allow private insurance there is no justification for the rule. Second, it contends that the rule defeats the Act's goal of limiting employer liability.

The normal justification for the last injurious exposure rule is that the rule solves two problems peculiar to occupational disease cases involving successive insurers. The Supreme Court of Oregon characterizes these as the proof

---

[6] RCW 51.16.120.

[7] This is in keeping with the holdings of numerous courts that apportionment should only be authorized by specific legislative enactment. *See, e.g., Hartl v. Big Sky of Mont., Inc.*, 176 Mont. 540, 579 P.2d 1239 (1978); *Pearson v. Continental Motors Corp.*, 395 Mich. 362, 235 N.W.2d 591 (1975); *Andrade v. Mintell*, 102 R.I. 148, 229 A.2d 50 (1967).

problem[8] and the assignment of responsibility problem. *In re Runft*, 303 Or. 493, 499, 739 P.2d 12 (1987). With respect to Weyerhaeuser's argument, only the assignment of responsibility problem is at issue. This refers to the difficulty in determining which insurer should be held responsible for what percentage of the award.

Under an apportionment system there must be a determination made as to what proportion of the disability occurred when each insurer was at risk. As the Board notes, however,

> an occupational disease may occur over a prolonged period of time during which a worker may receive multiple exposures while in the course of employment with multiple employers. If each successive employment exposes the worker to the conditions giving rise to the occupational disease, then that disease has arisen naturally and proximately out of each of those employments. . . . The problem is that it is difficult, if not impossible, to go back in time and determine the degree or extent to which each and every exposure affected the ultimate disability.

*In re Renfro*, Bd. of Indus. Ins. Appeals Dec. 86,2392 at 6 (1988); *see also* 4 A. Larson § 95.11, at 17-116. This problem makes it difficult to assign proportionate responsibility.[9]

---

[8]The "proof problem" refers to the difficulty an injured worker has in proving that a specific exposure contributed to the development of his or her occupational disease. The last injurious exposure rule requires the worker to prove only that the disease was caused by employment related exposure. *In re Runft*, 303 Or. 493, 499, 739 P.2d 12 (1987).

[9]There are also numerous procedural problems with apportionment, including determining who bears the burden of proof and how statutes of limitations affect the worker's claim. *See generally* 4 A. Larson §§ 95.12, 95.34 and cases cited therein. Weyerhaeuser claims these problems are solvable by an apportionment rule that requires the insurer to first pay the claim and then attempt to gain apportionment. Under this rule, Weyerhaeuser would assign the burden of proving apportionment to the insurer. While this might solve the general apportionment problems, adoption of such a complex rule is the province of the Legislature. *See In re Renfro*, Bd. of Indus. Ins. Appeals Dec. 86,2392, at 4; *Champion Int'l, Inc. v. Department of Labor & Indus.*, 50 Wn. App. 91, 93, 746 P.2d 1244 (1987).

The last injurious exposure rule eliminates this problem by arbitrarily assigning responsibility to the insurer at risk during the last exposure which bears a causal relationship to the disease. *Osteen v. A.C.&S., Inc.,* 209 Neb. 282, 290, 307 N.W.2d 514 (1981). While this result may appear unfair in a specific case, its benefit is that the costs will be spread proportionately among insurers over time by the law of averages. *Runft,* 303 Or. at 500.

Weyerhaeuser agrees that this may be true in states where numerous private insurers are involved in workers' compensation programs. Washington, however, is one of only six states that does not allow private carriers to participate in workers' compensation insurance.[10] Therefore, the costs are spread only between two groups: the State, and self-insurers. Weyerhaeuser contends that most changes in insurance are from state-funded to self-insured employers. Therefore, according to Weyerhaeuser, the self-insurers bear a disproportionate share of the burden. The Company concludes that, in Washington, the law of averages does not mitigate the arbitrariness of the last injurious exposure rule. It therefore asserts there is no justification for the rule, and the rule conflicts with the statutory scheme.

This argument fails for several reasons. First, there is nothing in the record to support the Company's contention that most changes are from state coverage to self-insurance. Second, there is nothing in the record to support the Company's claim that self-insurers bear a disproportionate share of the burden of the last injurious exposure rule. Weyerhaeuser fails to consider that employees might switch jobs from a self-insurer to a participant in the state fund. In that event, the last injurious exposure rule would impose liability upon the State.

■ Finally, we believe Weyerhaeuser's claim misconstrues the importance of the law of averages argument.

---

[10]4 A. Larson app. A-7-1 (Table 7).

Courts frequently cite the law of averages argument as mitigating the arbitrariness of the last injurious exposure rule. *See, e.g., Runft,* 303 Or. at 500; *Osteen,* 209 Neb. at 291. Courts do not, however, cite the law of averages argument *as a reason for adopting the rule.* Instead, courts adopt the rule because

> [i]t is more economical arbitrarily to assign full responsibility to the last employer than to attempt to apportion accurately responsibility according to causation. In addition, by assigning responsibility to an employer who can be identified without a determination of causation, the claimant is better protected from the risk of filing claims against the wrong employer. . . .

*Runft,* 303 Or. at 500. The rule also provides the benefit of not requiring the disabled worker to meet the often impossible burden of proving how a given exposure contributed to his or her disease. *In re Renfro,* Bd. of Indus. Ins. Appeals Dec. 86,2392, at 6; *Runft,* 303 Or. at 499; *Inkley v. Forest Fiber Prods. Co.,* 288 Or. 337, 344, 605 P.2d 1175 (1980). Those benefits are not lessened where the law of averages does not mitigate the rule's arbitrariness. Even if Weyerhaeuser is correct that the law of averages argument does not work in Washington, there are still sufficient justifications for adopting the last injurious exposure rule.

Weyerhaeuser also argues that adoption of the rule conflicts with the Act's goal of limiting employer liability. Adoption of the rule does not, however, defeat that goal. The *amount* of compensation is still statutorily limited, and the employer is still protected from additional common law liability.

Furthermore, limiting employer liability is only one of the goals of the Act. As stated by this court:

> The [Act] was the result of a compromise between employers and workers. In exchange for limited liability the employer would pay on some claims for which there had been no common law liability. The worker gave up common law remedies and would receive less, in most cases, than he would have received had he won in court in a civil action, and in exchange

would be sure of receiving that lesser amount without having to fight for it.

*Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 469, 745 P.2d 1295 (1987). Thus, the Act also is

intended to provide, at the expense of the industry employing them, a sure and speedy relief for work[ers] . . . from occupational diseases arising naturally and proximately from extrahazardous employment. . . .

*Favor v. Department of Labor & Indus.*, 53 Wn.2d 698, 703, 336 P.2d 382 (1959). By avoiding the numerous procedural problems associated with apportionment, the last injurious exposure rule better serves the goal of swift and certain relief for injured workers. It is easier to administer than the apportionment rule, and usually provides the highest level of benefits for the claimant. 4 A. Larson § 95.12, at 17-120.

■ The Board specifically rejected Weyerhaeuser's apportionment argument.[11] While the Board's interpretation of the Act is not binding upon this court, it is entitled to great deference. *Dolman v. Department of Labor & Indus.*, 105 Wn.2d 560, 566, 716 P.2d 852 (1986); *Scott Paper Co. v. Department of Labor & Indus.*, 73 Wn.2d 840, 440 P.2d 818 (1968); 81 Am. Jur. 2d *Workmen's Compensation* § 33 (2d ed. 1976).

The Court of Appeals has also adopted the last injurious exposure rule. *See Champion Int'l, Inc. v. Department of Labor & Indus.*, 50 Wn. App. 91, 746 P.2d 1244 (1987). In *Champion*, a worker suffered two on-the-job injuries. One occurred while the employer was state insured, and the other while the employer was self-insured. In holding the

---

[11]"[A]pportionment *as a remedy between successive insurers* tends to expand the parties and issues involved in an occupational disease case, thereby creating uncertainty and delay in the relief sought by a disabled worker, contrary to RCW 51.04.010." *In re Renfro*, Bd. of Indus. Ins. Appeals Dec. 86,2392, at 10.

employer liable for the full cost of vocational retraining, the court rejected apportionment and applied the last injurious exposure rule. 50 Wn. App. at 93-94.

The Court of Appeals, the Board, and the Department[12] have all adopted the last injurious exposure rule. We, too, conclude that implementation of the rule furthers the Act's overall goals. Implementation of the last injurious exposure rule may create a tension between the Act's goals of providing swift and certain relief to the worker on the one hand, and of limiting employer liability on the other. However, given our commitment to liberally construing the Act in favor of injured workers, *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979); *Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 510, 413 P.2d 814 (1966), that tension should be resolved in favor of the injured worker. *Dennis*, 109 Wn.2d at 470; *Lightle*, 68 Wn.2d at 510.

### III

Weyerhaeuser and amicus also argue that application of the last injurious exposure rule is not equitable. They point out that when Weyerhaeuser was state insured the Company paid premiums and, in return, the state insurance fund assumed the risk of any claims. Apportionment would assure that the State fulfill its part of the bargain by delivering on its promise to assume the risk.

At the heart of this argument is the assertion that the Act is a type of insurance. *See, e.g., Peterson v. Department of Labor & Indus.*, 22 Wn.2d 647, 651, 157 P.2d 298 (1945) (the Act is "industrial insurance and a workman is entitled to the insurance protection given by the act"). Therefore, basic principles of risk assumption should apply.

---

[12]The Department recently codified the last injurious exposure rule. *See* WAC 296-14-350.

■ While that is true, it is also true that the court must interpret the Act consistently with the Act's stated goals. The last injurious exposure rule furthers the Act's purposes. Adopting apportionment may comport with basic insurance principles, but it would not further the goals of the Act. Therefore, we decline to adopt apportionment. If the application of the last injurious exposure rule does result in some inequity, that matter is best corrected by the Legislature.

Weyerhaeuser also assigns error to the Board's holding that the claimants' occupational diseases did not become compensable until after Weyerhaeuser became a self-insurer. For purposes of determining which insurer is liable under the last injurious exposure rule, the question of when a disease becomes compensable is irrelevant. Therefore, we do not address this assignment of error.[13]

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

---

[13]In adopting the last injurious exposure rule for purposes of assigning liability among successive insurers, we do not mean to imply that the rule applies in all workers' compensation contexts. For example, we have also decided this day that the rule does not apply in determining which schedule of benefits to use in a given case. *See Department of Labor & Indus. v. Landon*, 117 Wn.2d 122, 814 P.2d 626 (1991). Today we adopt the rule only for purposes of determining liability among successive insurers in occupational disease cases.