IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHAWN L. ROBBINS, | ) | |
| | ) | No. 32237-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | PUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — We address whether, under RCW 51.32.160, a second copy of an application to reopen a worker's compensation claim, which copy attaches fresh medical records, constitutes a new application that requires a response from the Department of Labor & Industries (Department). We answer the question no. We affirm the Department and the Superior Court's ruling that the Department did not suffer a default by failing to respond to the second copy of the application.

FACTS AND PROCEDURE

On September 27, 2002, Shawn Robbins injured his right arm while working as an HVAC installer. Robbins went to an emergency room, which diagnosed Robbins with a distal biceps tendon rupture. He filed a claim for worker's compensation, which the Department allowed. Robbins returned to work on December 1, 2002. In the meantime,

the Department paid Robbins' medical bills and compensation for lost work. The Department closed Robbins' claim on September 29, 2003.

On November 30, 2006, Shawn Robbins applied to reopen his worker's compensation claim. The Department denied this application on December 26, 2006. Robbins protested, but the Department affirmed its denial of Robbins' application to reopen. Robbins appealed to the Board of Industrial Insurance Appeals (BIIA) on August 6, 2007. On April 24, 2008, at Robbins' request, BIIA dismissed the appeal.

On June 17, 2008, Dr. Thomas Gritzka evaluated Shawn Robbins. Dr. Gritzka then wrote a thirteen-page medical report outlining Robbins' medical history and the results of the physical evaluation. Dr. Gritzka opined that Robbins suffered from a worsening of the 2002 industrial injury, writing:

> [Robbins] has slightly greater impairment due to right elbow flexion contracture, a previously non-described ulnar deviation, and impaired radial deviation of the right wrist, and in my opinion, also has a low-grade cubital tunnel syndrome, which is consistent with having had an injury to the right elbow. When an individual ruptures the biceps tendon, there is bleeding that occurs in and around the elbow. There certainly is potential for this bleeding and edema to result in scarring within the cubital tunnel.

Clerk's Papers (CP) at 174.

On July 22, 2008, Shawn Robbins signed and completed another two-page "APPLICATION TO REOPEN CLAIM," with the subtitle "DUE TO WORSENING OF CONDITION." CP at 158. The worker completes the first page of this form, and the doctor finishes the second page. On the first page of his July application to reopen,

Robbins listed a right arm injury, which worsened on June 17, 2008, the date Dr. Gritzka evaluated him. Robbins left the second page blank. Robbins attached Dr. Gritzka's medical report with the application rather than asking Dr. Gritzka to complete the second page.

On July 24, 2008, Shawn Robbins' attorney sent the July 22 application to reopen to the Department. The attorney mailed a letter with the application. The letter stated a reapplication was enclosed and asked the Department to issue an order reopening Robbins' worker's compensation claim.

On August 21, 2008, the Department denied Shawn Robbins' July 2008 application to reopen his claim. The order read, in part, "The medical record shows the conditions caused by the injury have not worsened since the final claim closure." CP at 160. Robbins appealed to the BIIA on October 20, 2008, and the BIIA granted review on October 28.

Also on October 28, 2008, Physician Assistant Robert Barber evaluated Shawn Robbins. Barber completed page two of an "APPLICATION TO REOPEN CLAIM" form. CP at 178-79. On this page, Barber listed Robbins' current symptoms by writing: "Pain, mm spasm ® UE. Muscle Loss ® forearm. Pain w/ fine manip. ® Hand. w/ [illegible] mm spasm ® upper arm [and] Elbow. [illegible] ® forehand/Hand." CP at 179. The form asks the medical provider to list the medical findings that support a measurable worsening of the industrial injury. Barber wrote: "[illegible] muscle ®

3

Bicep. ↓ Ext. strength ® elbow. Sis. mm Atrophy ® forearm, ↓ Grip ® Hand." CP at 179.

On November 3, 2008, Shawn Robbins filed, with the Department, another "APPLICATION TO REOPEN CLAIM" form that included the second page completed by Robert Barber. CP at 178. The first page of that form, however, was a photocopy of the July 2008 application's first page completed by Shawn Robbins. Like the July 2008 application, the first page of the November 2008 filing indicated that the injury affected Robbins' right arm and the condition worsened on June 17, 2008. The November application also contained Shawn Robbins' July 22, 2008 signature used for the July application. The November 2008 filing was not accompanied with a letter from Robbins' attorney. The Department never responded to Robbins' November 2008 application to reopen.

On March 23, 2009, the BIIA conducted a conference on Shawn Robbins' July 2008 application to reopen his 2002 claim. During the conference, Robbins and the Department stipulated that, if called to testify, Dr. Thomas Gritzka would opine, on a more-probable-than-not basis, that Robbins' right arm condition caused by the industrial injury worsened between June 15, 2007 and August 21, 2008, as shown by objective medical findings. On that basis, Robbins and the Department agreed that Robbins, as of August 21, 2008, suffered a permanent partial impairment consistent with four percent of the amputation value of the right arm at or above the deltoid insertion or by

disarticulation at the shoulder. On July 6, 2009, the BIIA reversed the August 21, 2008 denial to reopen and instructed the Department to award Robbins a permanent partial disability consistent with four percent of the amputation value of the right arm at or above the deltoid insertion or by disarticulation at the shoulder, less one percent previously paid, and then to close the claim.

On December 13, 2010, Shawn Robbins once again applied to reopen his 2002 right arm injury claim. On April 25, 2011, the Department denied the December 2010 application on the ground that Robbins' condition had not worsened since the claim closure in July 2009. The Department reaffirmed this denial on September 23, 2011.

We return to Shawn Robbins' November 2008 application to reopen his worker's compensation claim, which application's first page was a copy of the July 2008 application. On April 25, 2012, an adroit Shawn Robbins moved the BIIA to grant him summary judgment on his November 2008 application. Robbins argued that his November 2008 filing constituted an application to reopen and the Department's failure to respond constituted the granting of that application under RCW 51.32.160.

On May 31, 2012, BIIA hearings Judge Donna Emmingham denied Robbins' summary judgment motion. She wrote:

> If I were to look at the facts in the light most favorable to the non-moving party, the Department, then I must find that there are material facts in dispute with respect to what exactly the claimant and [PA Robert Barber] intended by submitting the November 3, 2008 Application to Reopen Claim and whether that put the Department on notice that the claimant was

> seeking something different from the Application to Reopen Claim form
> that was submitted on July 28, 2008.

CP at 104.

On September 25, 2012, Judge Emmingham ruled in favor of the Department on the issue of whether the Department's failure to respond to the November 2008 filing constituted, by default, a grant of Shawn Robbins' application to reopen. Judge Emmingham also affirmed the Department's September 23, 2011 denial of Robbins' application to reopen. Judge Emmingham found the November 2008 filing to be another copy of the application to reopen claim form signed by Robbins on July 22, 2008, along with additional medical information. Judge Emmingham thus concluded that the November 2008 filing "did not put the Department on notice that Shawn L. Robbins was seeking reopening of his claim separate and distinct from the same application previously received on July 28, 2008." CP at 37. On November 7, 2012, the full BIIA adopted Judge Emmingham's proposed decision and order as its own.

Shawn Robbins appealed the BIIA decision to the Okanogan County Superior Court. The superior court affirmed the BIIA in a memorandum opinion. The superior court wrote, "The November application is redundant on its face and offers no reasonable notice to the department of the need to take additional action." CP at 15. The superior court entered findings of facts and conclusions of law, which adopted many of the BIIA's findings and conclusions. The superior court found, "On November 3. 2008, the

Department received *another copy* of the application to reopen claim form signed by Mr. Robbins on July 22, 2008 along with *supplementary* medical [information] from R. Barber, PAC, but no cover letter asking for reopening of the claim." CP at 9 (emphasis added).

## LAW AND ANALYSIS

As a preliminary matter, Shawn Robbins contends the superior court's anemic findings do not permit judicial review because Robbins cannot discern on what facts the court relied to support its findings. Robbins argues that the superior court's memorandum decision misstates facts and these misstatements complicate appellate review, in part, because these misstated facts are absent from but may complicate the superior court's subsequent formal findings. We disagree. Any misstated facts are not relevant to the issues on appeal. We rely on the superior court's findings of fact, not the memorandum decision.

A memorandum opinion may be considered as supplementation of formal findings of fact and conclusions of law. *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 523 n.3, 22 P.3d 795 (2001). In such cases, this court reviews the trial court's letter opinion, findings and conclusions, and judgment as a whole. *Meštrovac v. Dep't of Labor & Indus.*, 142 Wn. App. 693, 702, 176 P.3d 536 (2008), *aff'd on other grounds by Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 233 P.3d 853 (2010); *see also Tae T. Choi v. Sung*, 154 Wn. App. 303, 317, 225 P.3d 425 (2010). As discussed below, the

superior court's findings, reasoning, and ultimate ruling adequately permit appellate review.

Shawn Robbins assigns errors to a number of conclusions of law entered by the superior court. Our resolution of those assignments is subsumed in our legal discussion below.

Shawn Robbins otherwise contends, (1) substantial evidence does not support the trial court's finding of fact 1.3, and (2) the November 2008 filing contained sufficient information to constitute a new application to reopen as a matter of law thereby compelling a response from the Department. We disagree with both contentions.

*Issue 1: Whether substantial evidence support finding of fact 1.3?*

*Answer 1: Yes.*

The superior court's finding of fact 1.3 declares that the November 2008 filing was "*another copy* of the application to reopen claim form signed by Mr. Robbins on July 22, 2008 along with *supplementary* medical [information]." CP at 9 (emphasis added). Substantial, if not undisputed evidence, supports this finding.

In a worker's compensation case, an appeal lies from the judgment of the superior court as in other civil cases. RCW 51.52.140. Thus, in reviewing the superior court's decision, the role of this court is to determine whether the superior court's findings are supported by substantial evidence and whether those findings support the conclusions of law. *Eastwood v. Dep't of Labor & Indus.*, 152 Wn. App. 652, 657, 219 P.3d 711 (2009);

*Tomlinson v. Puget Sound Freight Lines, Inc.*, 166 Wn.2d 105, 109, 206 P.3d 657 (2009).

Substantial evidence exists if there is a sufficient quantity of evidence in the record to

persuade a fair-minded, rational person of the truth of the stated premise. *Eastwood*, 152

Wn. App. at 657.

Shawn Robbins concedes that the first page of the November 2008 filing is

identical to the July 2008 application's first page. A review of the two pages readily

confirms this concession of fact. This fact alone supports the superior court's finding that

the November 2008 filing was "another copy" of the July 2008 application to reopen.

The information contained in those first pages also supports the superior court's finding

that the injury affected Robbins' right arm, the condition worsened on June 17, 2008, and

Robbins signed the application on July 22, 2008. Thus, the November 2008 filing

addressed the same aggravation as its July counterpart.

Shawn Robbins argues that the July and November filings could not be the same

application since the second pages were different. This argument promotes form over

substance.

The second page of each application, to the contrary, supports the superior court's

finding that the July filing supplemented the November filing. In Dr. Gritzka's report

attached to the July application, Gritzka emphasized an aggravation of the injury to the

right wrist and elbow. Like Gritzka, Robert Barber, on the second page of the November

application, also concentrated on Robbins' right wrist and elbow. No language in the

November 2008 filing suggested a different aggravation than that described in the July 2008 application. Both forms listed an aggravation date of June 17, 2008. The November filing was not accompanied by any letter stating that Robbins considered the filing to be a distinct application from the July filing. Both parties proceeded as if the November application supplemented the July filing.

Shawn Robbins argues that the November 2008 filing could not supplement the July 2008 application, since the Department could not consider supplemental evidence until after resolution of Robbins' pending appeal of the denial of the July application. Robbins cites *In re Wilson*, Nos. 02 21517 & 03 12511, 2004 WL 1901021 (Wash. Bd. Ind. Ins. Appeals June 15, 2004). Without citation, the Department counters that workers can and do submit supplementary medical evidence to the Department even when the issues to which that evidence relates are on appeal. We see no need to resolve this dispute. Robbins' legal inability to supplement his July application does not preclude him from physically filing or unlawfully filing a supplement to the July application. Nothing precluded the Department from waiving the rule on which Robbins now relies. Robbins' inability to supplement the record would, if true, weigh against the superior court's finding, not demand a reversal. We do not reweigh evidence, but instead review findings for substantial evidence. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

No. 32237-8-III
*Robbins v. Dep't of Labor & Indus.*

*Issue 2: Whether, under RCW 51.32.160, the November 2008 filing provided notice to the Department of a distinct application to reopen?*

*Answer 2: No.*

Shawn Robbins contends the November 2008 filing contained sufficient information to constitute a discrete application to reopen as a matter of law, which placed the Department on notice it was required to respond. Since the content of the November 2008 filing is undisputed, this argument raises a question of law. We review such issues and questions of statutory interpretation de novo. *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 757, 153 P.3d 839 (2007).

We have already affirmed, in answer to issue one, the superior court's finding of fact that the November 2008 filing was the same application as the July 2008 filing. This second issue nearly repeats the first issue. We can distinguish between the two issues, however, on the basis that the first issue asked whether, under a common sense, practical, or factual ground, the November filing is a distinct application from the July 2008 application. The second issue asks: does the law, despite practical considerations, reckon the November filing of the identical first page with new medical information to be a distinct application to reopen. This second issue may render an answer to the first issue unimportant.

RCW 51.32.160 governs applications to reopen a claim and provides:

(1)(a) If aggravation, diminution, or termination of disability takes

11

place, the director [of the Department] may, *upon the application* of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010.

. . . .

(d) *If an order denying an application to reopen filed on or after July 1, 1988, is not issued within ninety days of receipt of such application* by the self-insured employer or the department, *such application shall be deemed granted.* However, for good cause, the department may extend the time for making the final determination on the application for an additional sixty days.

(Emphasis added.)

We conclude and agree with Shawn Robbins that the November 2008 filing was a sufficient application. But this conclusion does not answer the question of whether the Department needed to respond to the November filing as if it were separate from the July 2008 application. Neither statutory language nor Washington case law answers this issue. RCW 51.28.020 addresses the worker's initial application for worker's compensation benefits, but neither that statute nor Washington case law addresses whether the Department must answer a second related application that merely restates the same injury. The same is true with RCW 51.28.030 which controls an application for a death claim.

We find the reasoning in *Goad v. Treasurer of State*, 372 S.W.3d 1 (Mo. App. 2011) persuasive. After his wife's death, Wesley Goad filed an amended claim for

12

workers' compensation based on his wife's work injury. The amended claim did not state a new and distinct claim, but instead merely perfected and amplified her original claim. The amended claim made the exact same allegation of injury as the original claim. Since the two petitions alleged the very same injury and described the cause of the injury using the very same words, the Missouri court concluded there to be only one claim and the second filing related back to the first filing for purposes of determining what law to apply.

RCW 51.32.160 allows, on an application to reopen, readjustment commensurate with the "aggravation, diminution, or termination" of an injury. WAC 296-14-400 requires "accompanying medical substantiation of worsening of the condition" for an application to reopen. If a claimant in a later application fails to identify a second aggravation distinct in time and scope, a second readjustment or second worsening is missing. Our high court has ruled that an application to reopen should "give the department some information as to the reason for the application." *Donati v. Dep't of Labor & Indus.*, 35 Wn.2d 151, 154, 211 P.2d 503 (1949).

Shawn Robbins' November 2008 application gives an aggravation of arm injury on June 17, 2008 that worsened his right arm condition. This is the identical date stated on the July 2008 application. The November 2008 application repeated the same reason for reopening the workers' compensation claim as did the July 2008 application. The Department had no reason to conclude that Shawn Robbins, in his November filing,

13

sought to reopen his claim above and beyond the already pending appeal for the denied July filing. We hold that the two applications were the same for purposes of RCW 51.32.160, such that the Department need not have responded to the November filing.

*Issue 3: Whether a deficient July 2008 application rendered the November 2008 filing to be the operative application such that the Department needed to respond to the November filing?*

*Answer 3: No.*

Shawn Robbins pivots his stance and argues that the July 2008 application was deficient because the second page was not signed by any physician. Under this contention, Robbins did not formally apply to reopen his claim until November 2008. The Department, according to Robbins, did not need to respond to the incomplete July application but instead needed to respond to the November application.

Shawn Robbins relies, in part, on WAC 296-14-400, which differentiates an informal request from a formal application to reopen. The regulation reads:

> An informal written request filed without accompanying medical substantiation of worsening of the condition will constitute a request to reopen, but the time for taking action on the request shall not commence until a formal application is filed with the department or self-insurer as the case may be.
> A formal application occurs when the worker and doctor complete and file the application for reopening provided by the department. Upon receipt of an informal request without accompanying medical substantiation of worsening of the worker's condition, the department or self-insurer shall promptly provide the necessary application to the worker for completion.

14

Thus, the time in which the Department must respond does not begin to run until the Department receives "accompanying medical substantiation of worsening of the condition." WAC 296-14-400.

A principal flaw in Shawn Robbins' contention is the recognition that, even if the Department did not need to respond to a deficient July application to reopen, the Department responded. The Department and Shawn Robbins treated the July application as sufficient to reopen the claim. On this basis alone, the Department should not need to respond to the repeated and identical claim to reopen filed in November.

Shawn Robbins and the Department both cite *Donati v. Department of Labor & Industries*, 35 Wn.2d 151, 211 P.2d 503 (1949), which concerned the sufficiency of an application for the reopening of a claim of an injured workman for an alleged aggravation of his injury. In that case, attorneys wrote a letter to the Department listing eighteen claimants, including Donati, and their claim numbers giving no information as to the basis of the claims for aggravation, but stating that they had been retained by the eighteen claimants to reopen their respective claims for aggravation. On these facts, the *Donati* court ruled the letter was not sufficient to constitute an application to reopen Donati's claim. Applications to reopen, the court held, must be individual, in writing, and give the Department some information as to the reason for the application. *Donati*, 35 Wn.2d at 154. The letter in *Donati* was not individual, and failed to provide the Department Donati's reason for wanting to reopen his claim.

15

Robbins and the Department also cite *In re Hansen*, No. 90 1429, 1991 WL 246462 (Wash. Bd. Ind. Ins. Appeals June 10, 1991), a significant decision from the BIIA. RCW 51.52.160. While the Board's interpretation of the Industrial Insurance Act, Title 51 RCW, is not binding on this court, it is entitled to great deference. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991). *Hansen* is thus persuasive authority.

In *Hansen*, the BIIA considered whether one page of notes constituted an application to reopen the claim within the meaning of RCW 51.32.160. On April 12, 1989, the Department received a copy of one page of office progress notes from Dr. John C. Oakley. Dr. Oakley's notes included the Department's claim number for Hansen's industrial injury of October 27, 1983 and included a list of findings made by Oakley in March of 1989. Oakley indicated, among other things, that a CT scan and plain films, from March 1989, showed degenerative collapse of the lower spine. Oakley recommended a 4 to 6 week program of physical therapy with a follow-up evaluation as to further treatment.

In *Hansen*, the Department never responded to the filing of Dr. Oakley's notes. Applying *Donati*, the Board noted: "while Dr. Oakley's notes were not on an application to reopen form provided by the Department, they certainly contained clear medical substantiation of worsening, and lacked only the specific word 'request.'" *Hansen*, No. 90 1429, at *3. The Board reasoned:

16

The Legislature has not dictated a particular form which must be filed. It seems to us *if*, as here, *the claim is closed* and the document filed contains an individual's name and claim number, medical substantiation of apparent worsening of the industrially related condition, and a proposed course of treatment or other activity regarding that condition, *it adequately puts the Department on notice that the claimant is seeking reopening of his claim.*

*Hansen*, No. 90 1429, at *4 (emphasis added). The Board ruled the notes in *Hansen* satisfied our Supreme Court's standard in *Donati*, and thus put the Department on notice that Hansen sought to reopen his claim. *Hansen*, No. 90 1429, at *4. The Board also wrote:

If an application to reopen is legally sufficient, it should be so for all purposes. If the application meets the requirements set forth in Donati, it triggers the provisions of RCW 51.28.040, as well as the provisions of RCW 51.32.160.

*Hansen*, No. 90 1429, at *4. Since the notes satisfied *Donati*, which triggered RCW 51.32.160, and the Department never responded, Hansen's application to reopen his claim was "deemed granted." *Hansen*, No. 90 1429, at *6.

We find neither *Hansen* nor *Donati* to be on point. On the one hand, *Hansen* supports a conclusion that Shawn Robbins' July 2008 application with the attached report from Thomas Gritzka constituted a sufficient request to reopen. On the other hand, *Donati* lacks relevance to the issue on appeal. Whereas *Donati* could support a conclusion that the Department need not have treated Shawn Robbins' July 2008 application as complete, the *Hansen* decision undercuts but is consistent with *Donati*.

17

More importantly, *Donati* fails to address the ramifications of the Department's handling of an incomplete application as if it was sufficient. *Donati* does not tackle whether a second application with an identical first page to an earlier application is the same application as the first application.

We rule Shawn Robbins to be judicially estopped from asserting that the July 2008 application was deficient. Both the Department and Robbins considered the application to reopen operative. As a result, the Department reached an agreement with Robbins that, as of August 21, 2008, he suffered a permanent partial impairment consistent with four percent of the amputation value of the right arm at or above the deltoid insertion or by disarticulation at the shoulder. In turn, the BIIA instructed the Department to award Robbins permanent partial disability consistent with four percent of the amputation value of the right arm at or above the deltoid insertion or by disarticulation at the shoulder. Robbins benefitted from the July 2008 application. If Robbins had earlier asserted that the July application to be insufficient, there would have been no additional payment. Robbins never argued any insufficiency of the application until now.

Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007); *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006). The doctrine seeks to preserve respect for judicial proceedings and to avoid inconsistency,

duplicity, and waste of time. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 225, 108 P.3d 147 (2005); *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 906, 28 P.3d 832 (2001). Three core factors guide a determination of whether to apply the judicial estoppel doctrine: (1) whether a party's later position is clearly inconsistent with its earlier position, (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); *Arkison*, 160 Wn.2d at 538-39. As the doctrine is primarily a means of shielding the judicial system, a court may invoke the doctrine at its discretion, without being subject to the same strictures imposed on equitable defenses that were implemented primarily with litigants in mind. *In re Richardson*, 497 B.R. 546, 558 (Bankr. S.D. Ind. 2013).

*Issue 4: Whether Shawn Robbins should be awarded attorney fees?*

*Answer 4: No.*

Shawn Robbins requests an award of attorney fees under RAP 18.1 and RCW 51.52.130. RCW 51.52.130(1) provides:

> If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a

19

party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

Since we grant Robbins no additional relief, we deny him an award of attorney fees.

## CONCLUSION

We affirm the superior court's ruling that Shawn Robbins is entitled to no recovery under his November 2008 application to reopen his worker's compensation claim.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

20