IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| RONALD V. MA'AE, | ) | No. 77737-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) | |
| | ) | |
| Respondent. | ) | FILED: April 1, 2019 |

SCHINDLER, J. — We must liberally construe the statutory provisions of the Industrial Insurance Act (IIA), Title 51 RCW, to provide compensation to workers injured in the course of employment. RCW 51.32.160 gives a worker the right to file an application to reopen a claim for aggravation of an industrial injury. Case law requires the worker to prove aggravation by presenting expert medical evidence of objective worsening of the injury since closure of the claim. If the Department of Labor and Industries (Department) denies the claim, the worker has the right to appeal, but review is limited to the administrative record. In 2011, the legislature amended chapter 51.36 RCW, "Medical Aid," to establish a network of health care providers to treat injured workers. In addition to adopting rules to establish the health care provider network, the Department amended the WAC that governs reopening a claim for aggravation of an

industrial injury, WAC 296-14-400. The amendment to WAC 296-14-400 mandates that only a Department network provider can submit medical documentation in support of an application to reopen a claim to obtain benefits for aggravation of an industrial injury. We conclude the amendment to WAC 296-14-400 conflicts with the intent and purpose of the IIA; the amendment to chapter 51.36 RCW, Medical Aid; RCW 51.32.160; and long-standing case law and the right of a worker to prove aggravation of an industrial injury. We conclude the Department exceeded its statutory authority in promulgating the amendment to WAC 296-14-400 and the amendment is invalid. We reverse the declaratory judgment order.

Permanent Partial Disability Award

The facts are not in dispute. In 2007, Ronald V. Ma'ae worked as a journeyman carpenter for Safeway Services LLC. On January 19, Ma'ae suffered a back and shoulder injury. On February 5, 2007, the Department of Labor and Industries (Department) allowed the claim for industrial injury benefits under the Industrial Insurance Act (IIA), Title 51 RCW. On July 24, 2009, the Department closed the claim and awarded Ma'ae permanent partial disability benefits for "right upper extremity impairment."

2011 Amendment to Chapter 51.36 RCW

In 2011, the legislature amended the IIA, chapter 51.36 RCW, "Medical Aid," to establish a health care provider network to treat injured workers. LAWS OF 2011, ch. 6, § 1. RCW 51.36.010(1) states, in pertinent part:

> The legislature finds that high quality medical treatment and adherence to
> occupational health best practices can prevent disability and reduce loss
> of family income for workers, and lower labor and insurance costs for

employers. Injured workers deserve high quality medical care in accordance with current health care best practices.

The legislature directed the Department to establish "a health care provider network to treat injured workers" and "minimum standards for [network] providers who treat workers." RCW 51.36.010(1). The legislature states the Department "may adopt rules related to this section." RCW 51.36.010(10).

In addition to promulgating and amending chapter 296-20 WAC, "Medical Aid Rules," and chapter 296-14 WAC, "Industrial Insurance Rules," to establish a health care provider network to treat injured workers, the Department amended the rule on "Reopenings for Benefits," WAC 296-14-400. As amended, WAC 296-14-400 mandates that effective January 1, 2013, "where the department has established a provider network," medical documentation in support of a reopening application shall only "be completed by network providers." WASH. ST. REG. (WSR) 12-06-066.

2014 Denial of Reopening Application

On April 14, 2014, Ma'ae submitted an "Application to Reopen Claim Due to Worsening of Condition" to the Department with medical documentation from orthopedic surgeon Dr. H. Richard Johnson.

Dr. Johnson examined Ma'ae on March 14, 2014. Dr. Johnson states Ma'ae is experiencing "[d]aily headaches. Neck pain radiating into upper extremities. Right shoulder pain. Left shoulder pain. Right hand numbness. Low back pain. Anxiety and depression." Dr. Johnson states Ma'ae's industrial injury had objectively worsened and recommended "curative treatment" that included low back, neck, and shoulder diagnostic studies and consideration of low back surgery and "additional cervical spine surgery."

Dr. Johnson attached a report of the "current medical findings including history, examination, and test results that would support a <u>measurable (objective) worsening</u> of his industrial injury or occupational disease since claim closure or the last reopening denial."[1]

> [A]ggravation (permanent worsening) of cervical spondylosis; cervical radiculopathy, left greater than right; status post op three level anterior discectomies interbody fusions at C3-C4,C4-C5, and C5-C6 with anterior plate fixation; right shoulder strain/sprain; impingement syndrome, right shoulder; adhesive capsulitis, right[ ] shoulder (frozen shoulder; status post op right shoulder manipulation under anesthesia followed by arthroscopic capsular release, anterior subacromial decompression, and distal clavicle resection; aggravation of pre-existing left shoulder dysfunction; adhesive capsulitis of left shoulder; frozen left shoulder; ulnar entrapment neuropathy at the left elbow; status post op anterior ulnar nerve transposition at the left elbow; left carpal tunnel syndrome; status post[ ]op left carpal tunnel release; right carpal tunnel syndrome; thoracic strain/sprain; aggravation of pre-existing asymptomatic thoracic spondylosis; small left paracentral disc herniation at T12-L1; lumbosacral strain/sprain; aggravation (permanent worsening) of pre-existing, asymptomatic lumbar spondylosis; lumbar radiculopathy, bilateral; tear of lateral meniscus, right knee; erectile dysfunction; adjustment disorder with mixed anxiety and depressed mood; pain disorder with anxiety, depression, irritability, and low back pain; and chronic pain syndrome related on a more-probable-than not basis to the industrial injury of January 19, 2007.

The Department extended the time for the reopening application. At the direction of the Department, Ma'ae participated in independent medical examinations.

On September 5, 2014, the Department denied the reopening application because Dr. Johnson was not a member of the medical provider network.

> After further review, we have learned that Dr. H. Richard Johnson is not a member of Labor and Industries Medical Provider Network. Only approved network provider can file reopening applications.[ ]Your request for reopening has been denied. This claim remains closed.

---

[1] Emphasis in original.

4

The September 5, 2014 "Notice of Decision" states, "The department denies the reopening of this claim because no medical documentation has been provided to the department as required by law."

## Appeal of Department Decision to Deny Reopening Claim

On September 30, 2014, Ma'ae filed an appeal of the September 5 order denying the application to reopen to the Board of Industrial Insurance Appeals (BIIA).

The Department filed a motion for summary judgment. The Department argued it was entitled to judgment as a matter of law because Dr. Johnson was not a member of the Department's medical provider network. The Department asserted the amendment to WAC 296-14-400 "mandates that the documentation for reopening application 'must be completed by network providers.' " In opposition, Ma'ae argued the amendment to WAC 296-14-400 exceeded the authority of the Department to promulgate rules under RCW 51.36.010. In reply, the Department argued the legislature gave it the authority to amend WAC 296-14-400 to require a worker to submit documentation in support of an application to reopen from only a network provider. The Department asserted the BIIA does not have the authority to review the validity of the rule.

On June 25, 2015, a Board of Industrial Insurance Appeals judge (IAJ) issued a proposed decision and order affirming the decision of the Department to deny the application to reopen. On August 11, 2015, Ma'ae appealed the IAJ proposed decision and order to the BIIA.

## Declaratory Judgment Action

On August 12, 2016, Ma'ae filed a declaratory judgment action in Thurston County Superior Court challenging the authority of the Department to amend WAC 296-

14-400. Ma'ae asserted the amendment exceeded the authority of the Department to promulgate rules under RCW 51.36.010.

On October 20, 2016, the superior court entered an order and judgment. The order states the WAC 296-14-400 amendment is a valid rule.[2]

Appeal of Declaratory Judgment Order

Ma'ae contends the amendment to WAC 296-14-400 that limits the right of an injured worker to present expert medical documentation to prove objective worsening of an industrial injury from only a network provider exceeds the authority of the Department. Ma'ae asserts the amendment conflicts with the intent and purpose of the IIA; the amendment to chapter 51.36 RCW, Medical Aid; the statute on aggravation, RCW 51.32.160; long-standing case law; and the right to present evidence of aggravation on appeal.

The Washington Administrative Procedure Act, chapter 34.05 RCW, governs judicial review of an administrative rule. RCW 34.05.570 governs the validity of a rule. We review the validity of an agency rule de novo. Wash. Hosp. Ass'n v. Dep't of Health, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015); Local 2916, IAFF v. Pub. Emp't Relations Comm'n, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995); Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Agency rules are presumed valid. St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wn.2d 690, 702, 801 P.2d 212 (1990). "The burden of overcoming this presumption rests on the challenger, and

_____

[2] On November 23, 2015, the BIIA reversed the decision of the Department to deny Ma'ae's application to reopen. The BIIA concluded the statute establishing a health care provider network, RCW 51.36.010, and the statute that allows a worker to reopen a claim for aggravation, RCW 51.32.160, do not prevent a worker from filing an application to reopen with medical documentation from a doctor who is not a member of the Department's network. We address the Department's appeal of the BIIA decision in Department of Labor & Industries v. Ma'ae, No. 78030-1-I (Wash. Ct. App. Apr. 1, 2019) (unpublished), http://www.courts.wa.gov/opinions/.

judicial review will be limited to a determination of whether the regulation in question is reasonably consistent with the statute being implemented." St. Francis, 115 Wn.2d at 702. "[T]he court shall declare the rule invalid" if "the rule exceeds the statutory authority of the agency." RCW 34.05.570(2)(c). " '[A]lthough we generally accord substantial deference to agency decisions, we do not defer to an agency the power to determine the scope of its own authority.' " Fed'n of State Emps. v. Dep't of Gen. Admin., 152 Wn. App. 368, 377-78, 216 P.3d 1061 (2009)[3] (quoting In re Registration of Elec. Lightwave, Inc., 123 Wn.2d 530, 540, 869 P.2d 1045 (1994)).

" 'Administrative "[r]ules must be written within the framework and policy of the applicable statutes." ' " Wash. Hosp. Ass'n, 183 Wn.2d at 595[4] (quoting Swinomish Indian Tribal Cmty. v. Dep't of Ecology, 178 Wn.2d 571, 580, 311 P.3d 6 (2013) (quoting Dep't of Labor & Indus. v. Gongyin, 154 Wn.2d 38, 50, 109 P.3d 816 (2005))). " ' " '[A]dministrative rules or regulations cannot amend or change legislative enactments.' " ' " Wash. Hosp. Ass'n, 183 Wn.2d at 595 (quoting Swinomish Indian Tribal Cmty., 178 Wn.2d at 580-81 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 19, 43 P.3d 4 (2002) (quoting Dep't of Ecology v. Tehodoratus, 135 Wn.2d 582, 600, 957 P.2d 1241 (1998)))). If " 'the rule is "reasonably consistent with the controlling statute[s]," an agency does not exceed its statutory authority.' " Wash. Hosp. Ass'n, 183 Wn.2d at 595[5] (quoting Swinomish Indian Tribal Cmty., 178 Wn.2d at 580 (quoting Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wn.2d 637, 646, 62 P.3d 462 (2003))). Rules that are not consistent with or are broader than the statutes they

---

[3] Alteration in original.
[4] Alteration in original.
[5] Alteration in original.

7

implement are invalid. Wash. Hosp. Ass'n, 183 Wn.2d at 595 (quoting Swinomish Indian Tribal Cmty., 178 Wn.2d at 581 (citing Bostain v. Food Express, Inc., 159 Wn.2d 700, 715, 153 P.3d 846 (2007))).

Statutory interpretation is also a question of law that we review de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 607, 998 P.2d 884 (2000); Cockle v. Dep't of Labor & Indus., 142 Wn.2d 801, 807, 16 P.3d 583 (2001) (statutory construction is a question of law we review de novo). Our fundamental objective is to ascertain and give effect to legislative intent. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244-45, 350 P.3d 647 (2015). The "plain meaning" of a statute is discerned from the ordinary meaning of the language at issue as well as the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). "While we look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). Where the language of a statute is clear on its face, we give effect to the plain meaning as an expression of legislative intent. Campbell & Gwinn, 146 Wn.2d at 9-10. A statute is ambiguous if it has two or more reasonable interpretations, but not " 'merely because different interpretations are conceivable.' " Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006)[6] (quoting Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)).

---

[6] Internal quotation marks omitted.

Whenever possible, statutes are to be read together to achieve a " 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.' " Dep't of Revenue v. Fed. Deposit Ins. Corp., 190 Wn. App. 150, 157-58, 359 P.3d 913 (2015)[7] (quoting Employco Pers. Servs., Inc. v. City of Seattle, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991). An interpretation that reads language in isolation is too limited and fails to apply this rule. Jongeward v. BNSF Ry. Co., 174 Wn.2d 586, 595, 278 P.3d 157 (2012); see Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The construction of two statutes shall be made with the assumption that the legislature does not intend to create an inconsistency. State v. Bash, 130 Wn.2d 594, 602, 925 P.2d 978 (1996).

IIA

The legislature enacted the IIA in 1911 as "the product of a grand compromise" between employers and workers. LAWS OF 1911, ch. 74; Birklid v. Boeing Co., 127 Wn.2d 853, 859, 904 P.2d 278 (1995); Cowlitz Stud Co. v. Clevenger, 157 Wn.2d 569, 572, 141 P.3d 1 (2006).

The IIA is a compensation system designed to give "sure and certain relief" to an injured worker "regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010. The IIA is remedial in nature and the right of an injured worker to obtain benefits is statutory. Cockle, 142 Wn.2d at 811; Murray v. Dep't of Labor & Indus., 192 Wn.2d 488, 501, 430 P.3d 645 (2018).

---

[7] Alteration in original; internal quotation marks omitted.

The overarching and guiding principle in construing provisions of the IIA is that the IIA " 'is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.' " Cockle, 142 Wn.2d at 811[8] (quoting Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)).

Chapter 51.36 RCW, Medical Aid, governs medical aid for injured workers. A worker injured in the course of employment is entitled to compensation under the IIA. RCW 51.32.010; Tobin v. Dep't of Labor & Indus., 145 Wn. App. 607, 613, 187 P.3d 780 (2008). RCW 51.36.010(2)(a) states that "[u]pon the occurrence of any injury to a worker entitled to compensation under the provisions of this title, he or she shall receive proper and necessary medical and surgical services." When a condition is "fixed," the Department makes a permanent partial disability award and closes the claim. Dep't of Labor & Indus. v. Slaugh, 177 Wn. App. 439, 446, 312 P.3d 676 (2013); see also Pybus Steel Co. v. Dep't of Labor & Indus., 12 Wn. App. 436, 436-37, 530 P.2d 350 (1975); Robbins v. Dep't of Labor & Indus., 187 Wn. App. 238, 244, 349 P.3d 59 (2015).

RCW 51.32.160

The IIA allows an injured worker to reopen a claim for aggravation of the disability and additional medical benefits within seven years of the final award. RCW 51.32.160; Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343, 352, 409 P.3d 1162 (citing Tollycroft Yachts Corp. v. McCoy, 122 Wn.2d 426, 432, 858 P.2d 503 (1993)), review denied, 190 Wn.2d 1030, 421 P.3d 450 (2018). A worker may seek to

---

[8] Alteration in original.

reopen a claim for "aggravation" of the disability only after the award is final. RCW 51.32.160(1)(a). RCW 51.32.160(1)(a) provides, in pertinent part:

> If aggravation, diminution, or termination of disability takes place, the director [of the Department] may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010.

Objective Worsening

Long-standing case law requires the worker to prove aggravation by presenting medical testimony that establishes a causal connection " 'between the injury and the subsequent disability' " based on "some objective medical evidence" that the injury "has worsened since the initial closure of the claim." Eastwood v. Dep't of Labor & Indus., 152 Wn. App. 652, 656-57, 219 P.3d 711 (2009) (quoting Phillips v. Dep't of Labor & Indus., 49 Wn.2d 195, 197, 298 P.2d 1117 (1956)); Tollycroft Yachts, 122 Wn.2d at 432;[9] see Hendrickson, 2 Wn. App. 2d at 352; see also Lewis v. ITT Cont'l Baking Co., 93 Wn.2d 1, 3, 603 P.2d 1262 (1979) ("Medical evidence—based at least in part on objective symptoms—must show that an aggravation of the industrial injury resulted in increased disability."); Dinnis v. Dep't of Labor & Indus., 67 Wn.2d 654, 656, 409 P.2d 477 (1965) ("In an aggravation case, the burden of proving a claimed disability to be greater on the last terminal date than on the first terminal date is upon the claimant; and

---

[9] (Emphasis omitted.) The requirement that the worker provide objective medical evidence does not apply "if the symptoms of a condition are exclusively subjective in nature." Felipe v. Dep't of Labor & Indus., 195 Wn. App. 908, 918, 381 P.3d 205 (2016); Price v. Dep't of Labor & Indus., 101 Wn.2d 520, 528, 682 P.2d 307 (1984) (objective medical evidence is not required in worker compensation cases involving psychiatric disability because symptoms of psychiatric injury are necessarily subjective in nature). On appeal, Ma'ae does not argue that this exception applies.

to prevail he must produce medical evidence to that effect based, at least in part, upon objective findings of a physician."); Page v. Dep't of Labor & Indus., 52 Wn.2d 706, 709, 328 P.2d 663 (1958) (the extent of the disability at any relevant date must be determined by medical testimony and some objective evidence); Moses v. Dep't of Labor & Indus., 44 Wn.2d 511, 517, 268 P.2d 665 (1954) (To "establish a claim for an increase in an award as a result of the aggravation of a prior industrial injury, the burden is on the claimant to produce medical evidence, some of it based on objective findings, to prove that there has been an aggravation of the injury which resulted in increased disability."); Kresoya v. Dep't of Labor & Indus., 40 Wn.2d 40, 44, 240 P.2d 257 (1952)[10] ("[W]hether the condition of an injured workman had become aggravated since his claim had been closed . . . [can] be established only by medical testimony, and . . . a claim for aggravation is not sustained by such testimony if it is based upon subjective symptoms alone."); Felipe, 195 Wn. App. at 914 ("case law requires the worker to support a request to reopen with some objective medical evidence").

The Supreme Court defines "objective symptoms" as "those within the independent knowledge of the doctor, because they are perceptible to persons other than a patient." Hinds v. Johnson, 55 Wn.2d 325, 327, 347 P.2d 828 (1959)); see also Felipe, 195 Wn. App. at 915.

Right to Appeal Denial of Reopening Application

If the Department denies the application to reopen, the injured worker may appeal to the BIIA. RCW 51.52.050(2)(a). Following a hearing on the appeal before an IAJ, the worker may file a petition to review the proposed decision and order to the BIIA. RCW 51.52.104, .106; WAC 263-12-145.

_____

[10] Emphasis in original.

The worker has the right to appeal the decision of the BIIA to superior court. RCW 51.52.110. However, review of the final decision of the BIIA is de novo, based only on the administrative record and evidence presented to the BIIA. RCW 51.52.115. In an appeal to superior court, "either party shall be entitled to a trial by jury upon demand." RCW 51.52.115. 6A Washington Practice: Washington Pattern Jury Instructions: Civil 155.09 (6th ed. 2012) (WPI), "Extent of Disability or Aggravation—Basis of Medical Opinion," sets forth the burden of proof to establish aggravation of an industrial injury. WPI 155.09 states that "aggravation" of an "industrially related condition and the extent of" the increased disability "must be supported by medical testimony based at least in part upon one or more objective findings."[11]

The worker has the right to appeal the superior court decision to the Court of Appeals and the Supreme Court under the Rules of Appellate Procedure. RCW 51.52.110, .140 (appeal "shall lie from the judgment of the superior court as in other civil cases").

Amendment to Chapter 51.36 RCW, Medical Aid

In 2011, the legislature amended chapter 51.36 RCW, Medical Aid, to establish a health care provider network and minimum standards for providers who treat workers in order to provide high quality treatment to injured workers and lower labor and insurance

---

[11] WPI 155.09 states, in pertinent part:

Statements of complaints by the worker made to a physician are called subjective complaints. Findings of disability that can be seen, felt, or measured by an examining physician are called objective findings.

In determining [whether aggravation has occurred and] the extent of [any resulting increased] disability, a physician cannot rely solely upon complaints, but must have some objective basis for his or her opinion. On the other hand, a physician need not rely solely upon objective findings. If there are objective findings, then the physician may also consider subjective complaints.

(Alterations in original.)

13

costs for employers. LAWS OF 2011, ch. 6, § 1.[12] The legislature directs the Department to establish a medical provider network to treat injured workers and adopt minimum standards for health care providers. RCW 51.36.010. The legislature requires injured workers to obtain treatment from a network provider except for "an initial office or emergency room visit." RCW 51.36.010(2)(b). RCW 51.36.010 states, in pertinent part:

> (1) The legislature finds that high quality medical treatment and adherence to occupational health best practices can prevent disability and reduce loss of family income for workers, and lower labor and insurance costs for employers. Injured workers deserve high quality medical care in accordance with current health care best practices. To this end, the department shall establish minimum standards for providers who treat workers from both state fund and self-insured employers. The department shall establish a health care provider network to treat injured workers, and shall accept providers into the network who meet those minimum standards. The department shall convene an advisory group made up of representatives from or designees of the workers' compensation advisory committee and the industrial insurance medical and chiropractic advisory committees to consider and advise the department related to implementation of this section, including development of best practices treatment guidelines for providers in the network. The department shall also seek the input of various health care provider groups and associations concerning the network's implementation. Network providers must be required to follow the department's evidence-based coverage decisions and treatment guidelines, policies, and must be expected to follow other national treatment guidelines appropriate for their patient. The department, in collaboration with the advisory group, shall also establish additional best practice standards for providers to qualify for a second tier within the network, based on demonstrated use of occupational health best practices. This second tier is separate from and in addition to the centers for occupational health and education established under subsection (5) of this section.
>
> (2)(a) Upon the occurrence of any injury to a worker entitled to compensation under the provisions of this title, he or she shall receive proper and necessary medical and surgical services at the hands of a physician or licensed advanced registered nurse practitioner of his or her own choice, if conveniently located, except as provided in (b) of this subsection, and proper and necessary hospital care and services during the period of his or her disability from such injury.

---

[12] We note the legislature amended RCW 51.36.010 again in 2013 to change the language in subsection (4) from "state board of pharmacy" to "pharmacy quality assurance commission." LAWS OF 2013, ch. 19, § 48.

(b) Once the provider network is established in the worker's geographic area, an injured worker may receive care from a nonnetwork provider only for an initial office or emergency room visit. However, the department or self-insurer may limit reimbursement to the department's standard fee for the services. The provider must comply with all applicable billing policies and must accept the department's fee schedule as payment in full.

(c) The department, in collaboration with the advisory group, shall adopt policies for the development, credentialing, accreditation, and continued oversight of a network of health care providers approved to treat injured workers. . . .

. . . .

(10) The department may adopt rules related to this section.[13]

## Amendment of WAC 296-14-400, Reopening for Benefits

The legislature did not amend the statute that governs reopening a claim to obtain additional benefits under the IIA for aggravation of an industrial injury, RCW 51.32.160. However, in addition to promulgating Medical Aid Rules, chapter 296-20 WAC, and Industrial Insurance Rules, chapter 296-14 WAC, the Department amended the WAC on Reopening for Benefits, WAC 296-14-400. WSR 12-03-091 ("Proposed Rules Department of Labor and Industries"), 12-06-066.

Former WAC 296-14-400 (2004), Reopening for Benefits, provides, in pertinent part:

> The director [of the Department] at any time may, upon the workers' application to reopen for aggravation or worsening of condition, provide proper and necessary medical and surgical services . . . .
>
> The seven-year reopening time limitation shall run from the date the first claim closure becomes final and shall apply to all claims regardless of the date of injury. . . .
>
> . . . .
>
> A formal application occurs when the worker and doctor complete and file the application for reopening provided by the department. Upon receipt of an informal request without accompanying medical substantiation of worsening of the worker's condition, the department or

---

[13] Added emphasis shows the 2011 amendments to RCW 51.36.010. See LAWS OF 2011, ch. 6, § 1.

self-insurer shall promptly provide the necessary application to the worker for completion.

If, within seven years from the date the first closing order became final, a formal application to reopen is filed which shows by "sufficient medical verification of such disability related to the accepted condition(s)" that benefits are payable, the department, or the self-insurer, pursuant to RCW 51.32.210 and 51.32.190, respectively shall mail the first payment within fourteen days of receiving the formal application to reopen. If the application does not contain sufficient medical verification of disability, the fourteen-day period will begin upon receipt of such verification. If the application to reopen is granted, compensation will be paid pursuant to RCW 51.28.040. If the application to reopen is denied, the worker shall repay such compensation pursuant to RCW 51.32.240.

The 2012 amendment to WAC 296-14-400 mandates that where the Department has established a medical provider network, the worker can submit documentation only from a network provider as part of the application to reopen. WSR 12-06-066. WAC 296-14-400 states, in pertinent part:

A formal application occurs when the worker and doctor complete and file the application for reopening provided by the department. Upon receipt of an informal request without accompanying medical substantiation of worsening of the worker's condition, the department or self-insurer shall promptly provide the necessary application to the worker for completion. For services or provider types where the department has established a provider network, beginning January 1, 2013, medical treatment and documentation for reopening applications must be completed by network providers.[14]

The Department asserts RCW 51.36.010 gives it the authority to adopt the amendment to WAC 296-14-400 that only allows a worker to file an application to reopen a claim with medical documentation from only a Department network provider. Neither the plain and unambiguous language of the IIA, chapter 51.36 RCW, and RCW 51.32.160 nor long-standing case law and the right to appeal supports the Department's assertion.

---

[14] Added emphasis shows the 2012 amendment to WAC 296-14-400. See WSR 12-06-066.

The 2011 amendment to the Medical Aid statute, chapter 51.36 RCW, does not address either the statute that governs reopening a claim for aggravation of an industrial injury or case law that requires the worker to present medical testimony to establish a causal relationship between the injury and subsequent disability based on some objective findings.

A worker has the right to submit an application to reopen a claim to obtain benefits for aggravation of an injury. Case law establishes the worker has the burden of proving aggravation of an injury under RCW 51.32.160 by presenting objective medical findings. The amendment to the WAC rule on reopening impermissibly restricts the right of an injured worker to meet this burden of proof. The WAC amendment limits medical evidence of aggravation to documentation from only doctors who are members of the Department's approved health care provider network.

Contrary to the Department's argument, a medical examination and report submitted in support of reopening a claim is not "treatment" under RCW 51.36.010. The plain and unambiguous language of RCW 51.36.010(1) and (2)(a) address the intent to establish a network of health care providers in order to provide "high quality" medical treatment, providers who "treat injured workers," and "proper and necessary medical and surgical services" in accord "with current health care best practices." The Department defines "proper and necessary" medical services as follows:

> [(2)](a) Reflective of accepted standards of good practice, within the scope of practice of the provider's license or certification;
> (b) Curative or rehabilitative. Care must be of a type to cure the effects of a work-related injury or illness, or it must be rehabilitative. Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the

17

presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes;

(c) Not delivered primarily for the convenience of the claimant, the claimant's attending doctor, or any other provider; and

(d) Provided at the least cost and in the least intensive setting of care consistent with the other provisions of this definition.

WAC 296-20-01002.[15]

The unambiguous purpose of RCW 51.36.010 is to establish a network to provide "high quality medical treatment" of injured workers. The amendment to WAC 296-14-400 conflicts with the right of a worker to submit an application to reopen for aggravation and meet the burden to present medical testimony to prove some objective worsening. The amendment impermissibly limits the right of an injured worker to submit an application to reopen for aggravation with medical documentation only from a Department network provider.

We conclude the Department exceeded its authority by amending WAC 296-14-400 to limit a worker to submit medical documentation from only a network doctor in

---

[15] We note the rule also states, "A formal application occurs when the worker and doctor complete and file the application for reopening provided by the department." WAC 296-14-400. The Department defines "doctor" as follows:

For these rules, means a person licensed to independently practice one or more of the following professions: Medicine and surgery; osteopathic medicine and surgery; chiropractic; naturopathic physician; podiatry; dentistry; optometry. An attending doctor is a treating doctor.

WAC 296-20-01002. In accord with case law, the Department's application to reopen requires the doctor to provide objective findings of worsening. See WAC 296-14-400.

support of an application to reopen a claim for aggravation under the IIA. We hold the amendment to WAC 296-14-400 is invalid and reverse the declaratory judgment order.[16]

WE CONCUR:

_Schindler, J._

_Chun, J._                    _Appelwick, C.J._

---

[16] Ma'ae requests statutory attorney fees and costs under RCW 4.84.010 and .030. Upon compliance with RAP 18.1, we award Ma'ae statutory attorney fees and costs as the prevailing party.